# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| GLORIA ROSSITER, SUSAN SEDLAR, and MARY SCHNEIDER, Individually and on Behalf of All Others Similarly Situated, | Case No.: 18-cv-134 |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| v. | **Jury Trial Demanded** |
| NORTHLAND GROUP, INC., | |
| Defendant. | |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Gloria Rossiter is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Susan Sedlar is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Plaintiff Mary Schneider is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

6. Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from her a debt allegedly incurred for personal, family or household purposes.

7. Defendant Northland Group, Inc., ("Northland") is a foreign corporation with its principal place of business located at 7831 Glenroy Rd Ste 250 Edina, MN 55439.

8. Northland is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. Northland is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Northland is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

### *Facts Relating to Plaintiff Rossiter*

### *IRS Letter*

10. On or about February 27, 2017, Northland mailed a debt collection letter to Plaintiff Rossiter regarding an alleged debt owed to "Synchrony Bank" ("Synchrony"). A copy of this letter is attached to this complaint as Exhibit A.

11. Exhibit A states that it is attempting to collect a "Sam's Club" branded credit card account.

12. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff Rossiter inserted by computer.

13. Exhibit A states that the "Current Balance Due" of the debt is $8710.75.

14. Exhibit A also contains the following language:

> Subject to certain exceptions, Synchrony Bank is required under section 6050P of the Internal Revenue Code, and the regulations thereunder to issue a Form 1099-C for any discharge of debt of $600 or more. For these purposes, any portion of a debt that is canceled or forgiven is considered discharged. Under these rules, a discharge of debt must be reported regardless of whether the debtor is subject to tax on the discharged debt. Whether reported to you on Form 1099-C or not, amounts discharged may need to be included in your income. Please contact your tax adviser concerning the particular U.S. Federal income tax consequences to you.

15. The Internal Revenue Code, 26 U.S.C. §6050P, and Treasury Regulations, 26 C.F.R. §1.6050P-1 requires reporting of certain discharges of indebtedness.

16. Reporting is not required:

    a. Of the discharge of indebtedness that is interest or other non-principal amounts, 26 C.F.R. §§1.6050P-1(d)(2) and (3);

    b. Of the discharge of principal not exceeding $600.

17. Furthermore, even if the discharge of indebtedness has to be reported, there are substantial exceptions to the tax consequences of the discharge of indebtedness, namely the receipt of income from the discharge of indebtedness.

18. No taxable income results from the discharge of indebtedness if:

    a. The debtor is insolvent;

    b. The debt is disputed.

19. Many persons who are unable to pay credit card and similar personal debts are insolvent and will not realize income from the discharge of such debts.

20. Moreover, on information and belief, a substantial portion of the debt described in Exhibit A consists of interest, late fees, and other non-principal amounts. Synchrony would have charged a default interest rate of approximately 25 to 30 percent for several months before charging off the account. The *regular purchase rate* (i.e. not the default rate) for Synchrony's Sam's Club credit card is 26.49% and is variable, and the "maximum late fee" is $37.00 per late or missed payment. *See* https://wallethub.com/d/new-york-company-credit-card-1860c/.

21. It is thus entirely possible to forgive $600 or more of the debt and yet not be required to file an IRS Form 1099C. In Plaintiff Rossiter's case, it is likely that less than $600 of the stated balance of Plaintiff Rossiter's account consists of amounts attributable to interest and fees.

3

22. Upon information and belief, Synchrony files an IRS Form 1099C as a general practice, whenever a consumer discharges more than $600 pursuant to a settlement.

23. Upon information and belief, neither Northland nor Synchrony take any steps to determine whether the IRS *actually* requires the creditor to file a 1099C in any particular consumer's circumstance.

24. Referring to tax consequences in a collection letter is intimidating and misleading, suggesting to the unsophisticated consumer that failure to pay the debt in full will give rise to problems with the Internal Revenue Service ("IRS").

25. Exhibit A misleads the unsophisticated consumer by implying that:

   a. Unless the consumer pays the entire amount that the defendant alleges is owed on the alleged debt, the consumer could be reported to the IRS.

   b. Unless the consumer pays the entire amount the letter alleges is owed for the debt, the consumer is going to have to pay taxes on the unpaid balance.

26. Frequently, issuing a 1099C when not required does, in fact, create problems with the IRS and state taxing authorities. Persons who do not report the discharged amount listed on a 1099C as income are at risk to receive a tax deficiency notice or a reduced refund.

27. Defendant voluntarily chose to give the tax advice found in Exhibit A. No law or regulation obligates defendants to include the statement complained of in collection letters.

### *Letters misrepresenting the balance*

28. On or about May 27, 2017, Northland mailed a debt collection letter to Plaintiff Rossiter regarding an alleged debt owed to "CITIBANK, N.A." ("Citibank"). A copy of this letter is attached to this complaint as Exhibit B.

29. Exhibit B states that it is attempting to collect a "Citi Mastercard" credit card account. Exhibit B.

4

30. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff Rossiter inserted by computer.

31. Exhibit B states that the "Account Balance" of the debt is $9,421.29.

32. On or about June 30, 2017, Northland mailed a debt collection letter to Plaintiff Rossiter regarding the same alleged Citibank debt as referenced in Exhibit B. A copy of this letter is attached to this complaint as Exhibit C.

33. Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiff Rossiter inserted by computer.

34. Exhibit C states that the "Account Balance" of the debt is $9,421.29.

35. On or about July 30, 2017, Northland mailed a debt collection letter to Plaintiff Rossiter regarding the same alleged Citibank debt as referenced in Exhibit B and Exhibit C. A copy of this letter is attached to this complaint as Exhibit D.

36. Upon information and belief, Exhibit D is a form letter, generated by computer, and with the information specific to Plaintiff Rossiter inserted by computer.

37. Exhibit D states that the "Account Balance" of the debt is $9,421.29.

38. On or about August 29, 2017, Northland mailed a debt collection letter to Plaintiff Rossiter regarding the same alleged Citibank debt as referenced in Exhibits B-D. A copy of this letter is attached to this complaint as Exhibit E.

39. Upon information and belief, Exhibit E is a form letter, generated by computer, and with the information specific to Plaintiff Rossiter inserted by computer.

40. Exhibit E states that the "Account Balance" of the debt is $9,421.29.

41. Exhibit E also contains the following language:

> Despite many opportunities to resolve this matter, the account remains unpaid. We understand the balance may seem to be out of your reach or out of your budget. You can make payments of $942.13 a month and pay down your amount due while keeping open the option of saving money in the future by settling on the balance. Payments must be no more than 30 days apart. We are not obligated to renew this offer. Please make payments by due dates below. If you need additional time to respond to this offer, please contact us. Coupons are attached for your first three payments and we will send additional coupons if you request them. Upon completion of the payment plan, a letter will be sent confirming the above referenced account has been resolved. Make check payable to Citi.

Exhibit E.

42. Without extending an offer to settle the debt for less than the amount owed, Exhibit E states that the consumer "can make payments of $942.13 a month and pay down your amount due while keeping open the option of saving money in the future by settling on the balance." Exhibit E.

43. Exhibit E also states "Please make payments by due dates below" and contains "coupons" to inform the consumer of those dates:

```
Northland Reference #: F91323990        Northland Reference #: F91323990        Northland Reference #: F91323990
Client Code: CBNK                       Client Code: CBNK                       Client Code: CBNK
Original Account #: ***********4736     Original Account #: ***********4736     Original Account #: ***********4736
Mail Payment to:                        Mail Payment to:                        Mail Payment to:
    Northland Group                         Northland Group                         Northland Group
    P.O. Box 390905                         P.O. Box 390905                         P.O. Box 390905
    Minneapolis, MN 55439                   Minneapolis, MN 55439                   Minneapolis, MN 55439
Or pay online at:                       Or pay online at:                       Or pay online at:
payments2northland.com                  payments2northland.com                  payments2northland.com
PAYMENT AMOUNT: $942.13                 PAYMENT AMOUNT: $942.13                 PAYMENT AMOUNT: $942.13
Due Date: 09/19/17                      Due Date: 10/19/17                      Due Date: 11/18/17
```

Exhibit E.

44. Exhibit E also states that "We are not obligated to renew this offer." Exhibit E.

45. The payment plan described in Exhibit E is not actually a settlement offer; it is an offer to "keep[] open the option of saving money in the future."

46. Considering Exhibit E as a whole, the unsophisticated consumer would understand Exhibit E to mean that Northland and Citibank would not agree to settle her debt for less than the balance owed unless she tendered a payment of $942.13 by September 19, 2017.

6

47. Moreover, Exhibit E describes monthly payments of $942.13 but Plaintiff Rossiter's account balance is $9,421.29.

48. If the consumer tendered 10 monthly settlement payments of $942.13, she would send a total of $9,421.30.

49. Exhibit E states that "we will send additional coupons if you request them." Exhibit E.

50. Thus, the unsophisticated consumer would be induced to tender more than the balance owed unless she made an express request for additional settlement coupons.

51. On or about October 28, 2017, Northland mailed a debt collection letter to Plaintiff Rossiter regarding the same alleged Citibank debt as referenced in Exhibits B-E. A copy of this letter is attached to this complaint as Exhibit F.

52. Upon information and belief, Exhibit F is a form letter, generated by computer, and with the information specific to Plaintiff Rossiter inserted by computer.

53. Exhibit F states that the "Account Balance" of the debt is $9,298.80.

54. Plaintiff did not make a payment between Exhibits E and F.

55. Plaintiff was confused about why the account balance appeared to decrease between Exhibits E and F.

56. The unsophisticated consumer would be confused about why the account balance appeared to decrease between Exhibits E and F.

57. Such misrepresentations are material because they mislead the unsophisticated consumer about the amount and character of the debt. *See* 15 U.S.C. § 1692e(2)(a).

58. The Seventh Circuit has held that a debt collector must state the amount of the debt without "obscur[ing] it by adding confusing other information (or misinformation)." *Miller*

*v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 2000 U.S. App. LEXIS 12178 (7th Cir. Ill. 2000); *Marshall-Mosby v. Corporate Receivables, Inc.,* 205 F.3d 323, 326 (7th Cir. 2000); *Bartlett v. Heibl,* 128 F.3d 497, 500 (7th Cir. 1997).

59. Looking at the letters together, the unsophisticated consumer would be baffled as to whether a payment of the balance listed in Exhibit F would actually pay off the alleged debt.

60. Moreover, the varying amounts may reflect an incorrect belief on Northland or Citibank's part that Plaintiff made a payment.

61. Under Wisconsin law, a payment restarts the statute of limitations. *Liberty Credit Servs. v. Quinn*, 276 Wis. 2d 826, 688 N.W.2d 768 (Ct. App. 2004) ("A partial payment on the contractual obligation made before the statute of limitations has run tolls the statute and sets it running from the date of payment.").

62. Moreover, "re-aging" the debt by falsely making it look like the consumer made a payment has a negative impact on the consumer's credit file and "scores." Older delinquencies have less impact on the consumer's credit "scores" than newer ones.

63. Plaintiff Rossiter was confused by Exhibits A-F.

64. The unsophisticated consumer would be confused by Exhibits A-F.

*Facts Relating to Plaintiff Sedlar*

65. On or about February 3, 2017, Northland mailed a debt collection letter to Plaintiff Sedlar regarding an alleged debt owed to "CAPITAL ONE BANK (USA), N.A." ("Capital One"). A copy of this letter is attached to this complaint as Exhibit G.

66. Exhibit G states that it is attempting to collect a "Capital One" credit card account. Exhibit G.

67. Upon information and belief, <u>Exhibit G</u> is a form letter, generated by computer, and with the information specific to Plaintiff Sedlar inserted by computer.

68. <u>Exhibit G</u> states that the "Current Balance Due" of the debt is $11,354.46.

69. <u>Exhibit G</u> also contains the following language:

> CAPITAL ONE BANK (USA), N.A., the creditor of your account, has placed the above referenced account with Northland Group, Inc. for collection. We would like to offer you a settlement on your account for $5,121.60 in 12 payments over 12 months starting on 02/24/2017. Each payment must be received within 30 days of the previous payment. If you skip or are late on a payment, we reserve the right to cancel the settlement arrangement. If you need additional time to respond to this offer, please contact us. Please note, we are not obligated to renew this offer. Once all 12 payments of $426.80 have been paid to our office on time, a letter will be sent confirming that the above referenced account has been resolved.

<u>Exhibit G</u>.

70. The above statement in <u>Exhibit G</u> is confusing and misleading to the unsophisticated consumer. The unsophisticated consumer would be led to believe that she would not be able to settle her account at a later date unless she made a payment under the above settlement offer but later defaulted on the payment plan by missing a payment or making a late payment.

71. Statements such as a settlement offer is a "limited time offer," or that the offer expires on a specific date, or that payments must be received by that date, are false and misleading because the same offer is, upon information and belief, available at any time.

72. Such false statements are material false statements, as they impart in the unsophisticated consumer, a false belief that he or she must hurry to take advantage of a limited-time opportunity, when in reality, there is no such time limit.

73. The Seventh Circuit has established "safe harbor" language regarding settlement offers in collection letters:

> As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following

9

language: "We are not obligated to renew this offer." The word "obligated" is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

*Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775-76 (7th Cir. 2007).

74. Defendant's inclusion of the safe harbor language in <u>Exhibit G</u> is overshadowed by Defendant's prior statement that "If you skip or are late on a payment, we reserve the right to cancel the settlement arrangement." <u>Exhibit G</u>.

75. The implication of the safe harbor language, understood in the context of the letter, is that Defendant may provide opportunities to settle at a later date if an accepted settlement offer is cancelled due to a missed or late payment.

76. In the context of the letter, the safe harbor language does not apply to any settlement offer unless the first payment is timely received by the settlement deadline, February 24, 2017.

77. Upon information and belief, the deadline in <u>Exhibit G</u> to respond to the settlement offer is a sham. There is no actual deadline. The sole purpose of the purported deadline is to impart in the consumer a false sense of urgency.

78. Upon information and belief, Defendant had authority from Capital One to settle Plaintiff Sedlar's account for $5,121.60, or less, at any time.

79. Upon information and belief, neither Northland nor Capital One cancels accepted settlement agreements simply because the customer makes a late settlement payment.

80. Upon information and belief, the statement that Defendant "reserve[s] the right to cancel the settlement arrangement" due to a late payment is a false threat.

81. Plaintiff Sedlar was confused by <u>Exhibit G</u>.

82. The unsophisticated consumer would be confused by <u>Exhibit G</u>.

*Facts Relating to Plaintiff Schneider*

83. On or about March 29, 2017, Northland mailed a debt collection letter to Plaintiff Schneider regarding an alleged debt owed to "Department Stores National Bank" ("DSNB"). A copy of this letter is attached to this complaint as Exhibit H.

84. Exhibit H states that it is attempting to collect a "Macy's" credit card account. Exhibit H.

85. Upon information and belief, Exhibit H is a form letter, generated by computer, and with the information specific to Plaintiff Schneider inserted by computer.

86. Exhibit H states that the "Account Balance" of the debt is $332.43.

87. Exhibit H also contains the following language:

> **Option 2 (Monthly payments on Balance):** If you are not in a position to take advantage of a settlement offer at this time, we are willing to accept monthly payments of $50 to be applied towards the balance on your account. We are not obligated to renew this offer. If you wish to take advantage of this option, please send your payments to the above address, and be sure to reference your Northland reference number on your payment. Upon receipt of your first payment, we will send you payment coupons for your future monthly payments. Once you are in a position to offer a settlement, please contact us.

Exhibit H.

88. Without extending an offer to settle the debt for less than the amount owed, Option 2 in Exhibit H states that "we are willing to accept monthly payments of $50 to be applied towards the balance on your account." Exhibit H.

89. Exhibit H also states that "We are not obligated to renew this offer. . . . Once you are in a position to offer a settlement, please contact us." Exhibit H.

90. The payment plan described in Option 2 in Exhibit H is deceptive, misleading, and confusing.

91. Upon information belief, the payment plan described in Option 2 in Exhibit H is available at any time, notwithstanding Exhibit H's statement that Defendant is "not obligated to renew" it.

11

92. Exhibit H states that Defendant is "not obligated to renew" Option 2, but does not provide an expiration date through which the unsophisticated consumer may feel confident that she may take advantage of Option 2.

93. Stating that Defendant is "not obligated to renew" Option 2 is a material false statement in the context of Exhibit H because, without providing an expiration date for it, because it imparts in the unsophisticated consumer a false sense of urgency.

94. Moreover, the statement that Defendant is "not obligated to renew" Option 2 without providing an expiration date for it is a material false threat to rescind the offer at any time and without notice.

95. Plaintiff Schneider was confused by Exhibit H.

96. The unsophisticated consumer would be confused by Exhibit H.

97. Plaintiff Schneider had to spend time and money investigating Exhibit H.

98. Plaintiff Schneider had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff Schneider on the consequences of Exhibit H.

### *The FDCPA*

99. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations

12

of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

100. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt

13

collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

101. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

102. 15 U.S.C. § 1692e(2) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt, or the "false representation of…compensation which may be lawfully received by any debt collector for the collection" of an alleged debt.

103. 15 U.S.C. § 1692e(5) specifically prohibits the "threat to take any action that cannot legally be taken or that is not intended to be taken."

104. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

105. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

106. 15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

## **COUNT I -- FDCPA**

107. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

108. Count I is brought on behalf of Plaintiff Rossiter.

109. <u>Exhibit A</u> made false, deceptive, misleading, and confusing references to potential tax consequences of settling a debt

110. Defendant violated 15 U.S.C. §§1692e, 1692e(2), 1692e(10), and 1692f.

111. Misrepresentation of a debtor's rights or liabilities under the Internal Revenue Code in connection with the collection of a debt is an FDCPA violation. *Kaff v. Nationwide Credit, Inc.*, 13cv5413, 2015 WL 12660327 (E.D.N.Y., March 31, 2015); *Wagner v. Client Servs., Inc.*, 08cv5546, 2009 WL 839073, at *4 (E.D. Pa. Mar. 26, 2009); *Good v. Nationwide Credit, Inc.*, 14cv4295, 2014 WL 5422103, at *3 (E.D. Pa. Oct. 24, 2014); *Kuehn v. Cadle Co.*, 5:04cv432, 2007 U.S. Dist. LEXIS 25764 (M.D. Fla., April 6, 2007).

## **COUNT II -- FDCPA**

112. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

113. Count II is brought on behalf of Plaintiff Rossiter.

114. <u>Exhibit B</u> contained false, deceptive, misleading, and confusing representations in connection with the collection of the debt.

115. The payment option offered in <u>Exhibit B</u> was an unconscionable means of collecting or attempting to collect the debt.

116. The false and confusing representation of the balance, and that the balance changed between <u>Exhibits E and F</u>, mislead the consumer about the character, amount and legal status of the alleged debt.

117. Defendant violated 15 U.S.C. §§1692e, 1692e(2)(a), 1692e(10), 1692f, and 1692f(1).

## COUNT III -- FDCPA

118. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

119. Count III is brought on behalf of Plaintiff Sedlar.

120. <u>Exhibit G</u> contained false, deceptive, misleading, and confusing representations in connection with the collection of the debt.

121. Defendant did not clearly indicate to the consumer that there was a renewal possibility if the consumer did not make a payment on the account prior to the expiration date.

122. Defendant violated 15 U.S.C. §§1692e and 1692e(10).

## COUNT IV -- FDCPA

123. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

124. Count IV is brought on behalf of Plaintiff Schneider.

125. <u>Exhibit D</u> contained false, deceptive, misleading, and confusing representations in connection with the collection of the debt.

126. By stating that Defendant was not obligated to renew the payment plan offer without providing an expiration date, Defendant falsely threatened to rescind the payment plan offer at any time and without notice.

127. Defendant violated 15 U.S.C. §§1692e, 1695e(5), and 1692e(10).

## CLASS ALLEGATIONS

128. Plaintiffs brings this action on behalf of five Classes.

129. Class I, consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> to the Complaint in this action, (c)

16

between January 16, 2017 and January 16, 2018, inclusive, (d) that was not returned by the postal service. Plaintiff Rossiter is the named representative for Class I.

130. Class II consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit E to the Complaint in this action, (c) between January 16, 2017 and January 16, 2018, inclusive, (d) that was not returned by the postal service. Plaintiff Rossiter is the named representative for Class II.

131. Class III consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibits A, B, C, D, E or F to the Complaint in this action, (c) in which the balance in any of the letters changed without the Plaintiff making a payment or interest being added to the account, (d) between January 16, 2017 and January 16, 2018, inclusive, (e) that was not returned by the postal service. Plaintiff Rossiter is the named representative for Class III.

132. Class IV consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit G to the Complaint in this action, (c) between January 16, 2017 and January 16, 2018, inclusive, (d) that was not returned by the postal service. Plaintiff Sedlar is the named representative for Class IV.

133. Class V consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit H to the Complaint in this action, (c) between January 16, 2017 and January 16, 2018, inclusive, (d) that was not returned by the postal service. Plaintiff Schneider is the named representative for Class V.

134. Each Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of each Class.

135. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendant violated the FDCPA.

136. Plaintiffs' claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

137. Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

138. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

139. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: January 25, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110

(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com

19